# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| CHARLES A. MAHONE, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 14-0949-CV-W-GAF-P |
| LARRY DENNY, | ) ) ) |
| Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS, AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Crossroads Correctional Center in Cameron, Missouri has filed *pro se* this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2007 convictions and sentences for second-degree murder, abuse of a child resulting in death, abuse of a child, and first-degree child endangerment (2 counts), which were entered in the Circuit Court of Jackson County, Missouri. Petitioner's convictions were affirmed on direct appeal. Doc. 5-7. Petitioner's motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was denied following an evidentiary hearing (Doc. 5-10, pp. 54-88) and that denial was affirmed on appeal therefrom (Doc. 5-14).

### Statement of Facts

The Missouri Court of Appeals, Western District, set forth the following facts:

> A passing motorist found [A.M.] dead in his step-father's car at the side of the road. [A.M.] was lying on the back seat of [petitioner]'s car; [petitioner] was laying nearby calling out for "his son." [Petitioner] claims that [A.M.] had been ejected and thrown several feet from the car when [petitioner]'s car was run off the road. [Petitioner] claimed that he had dragged [A.M.] back up to the car.
>
> [A.M.] was unresponsive but did not exhibit any evident injuries beyond some blood crusted under his nose and near his mouth. Neither the motorist, the responding police officers, nor the EMTs could revive the child. The EMT thought that the child's body temperature was lower than it should have been if he

had just died. [A.M.] was transported to Children's Mercy Hospital where he was declared dead.

[Petitioner] was transported to a hospital on a back board, hyperventilating and complaining of back pain, numbness and tingling in his hands and feet. The responding paramedics did not see any scrapes, marks, or bruises, such as a steering wheel impression, seat belt abrasion, or injury from hitting the rear view mirror. When police interviewed [petitioner] the next day, [petitioner] was walking and had no visible injuries from the accident.

[Petitioner] claimed that he was on the way to a lawn mowing job when his car was forced off the road by another motorist. He stated that his car hit a tree. He told investigators that he struck his head on the rear view mirror, which was found lying on the floor of the car. He stated that, after the car came to a stop, he had to kick open the driver's door.

He told responding personnel that he found [A.M.] lying face down in the grass and leaves about twelve feet from the vehicle. He stated that [A.M.] had been ejected from the car in the accident. [Petitioner] told investigators that he dragged [A.M.] back to the car by his shirt and placed him in the car.

[Petitioner] claimed that [he] did not know how [A.M.] was ejected from the vehicle, but told the detective that the moon roof and all of the windows of the car were open. He claimed that he had strapped [A.M.] into his car seat but had not strapped the car seat into the car. The car seat was found upright in the back seat.

The police were immediately suspicious of [petitioner]'s story. They did not find any skid marks indicating that the car had come to an abrupt stop. The car did not have significant damage to the front of the car, the windshield was intact, and the interior was undamaged. Items that officers expected to [be] thrown around in an accident, such as the unstrapped car seat, were undamaged, and a lawn mower, sitting in the open trunk, was still upright. The accident investigator concluded that that car was not traveling at a high speed when it left the roadway but, rather, was pulled onto the side of the road into the brush, coming to a gradual stop. He did not find any evidence of a violent front end collision or that the car had rotated such that [A.M.] would have been ejected from the car.

Evidence from a search of [petitioner]'s home uncovered [A.M.]'s blood on a shirt, a pillowcase, a washcloth, the shower wall, and the front door. The police did not locate the clothing that [A.M.] had been wearing earlier in the day when he had gone with his mother to the hospital.

The hospital doctor who pronounced [A.M.] dead said that the child's temperature was very low for someone who had recently died and concluded that

[A.M.] had likely died prior to the accident. [A.M.] was not bleeding but had injuries on his face and head, inner thighs, and scrotum. The doctors concluded that [A.M.]'s injuries were more consistent with abuse than a car accident.

Dr. Thomas Young performed the autopsy of the body. He found bruises all over the body, including purple bruises on the scalp, a long bruise crossing the back of the head, bruises on the buttocks, band-like injuries to the back of the thighs, bruising on the outer part of the right eye, bruising on the right and left sides of the forehead, and a mottled bruise covering the left side of the child's face. Dr. Young concluded that the bruising to the back of the head was consistent with blunt force trauma to the head or the head striking an object. The bruises on the thighs were consistent with karate-chop style blows, striking the child with a rod, or slamming him down in a chair. The bruising indicated that [A.M.] had suffered many blows but the doctors could not tell how many. The bruising to the scrotum and penis were consistent with someone grabbing and ramming the genitalia.

[A.M.] exhibited signs of scraping along the rim of the nose, the outer part of the left eye, and along the edge of his lips. Dr. Young found scrapes on the upper lip that matched cuts to the teeth and similar scrapes on the wet part of the lower lip. Dr. Young believed these injuries were consistent with someone placing their hand forcibly over the child's mouth but not consistent with injuries from ejectment in a car accident. Petechial hemorrhaging in the eyes were consistent with blunt force trauma or asphyxia injury.

Dr. Gill, an expert on brain injury and brain pathology, examined [A.M.]'s brain. He found evidence of deep brain injury resulting from [A.M.]'s head being rapidly shifted or slammed into something. Dr. Gill observed blood along the optic nerves and other injuries consistent with Dr. Young's theory that [A.M.] died shortly after the blow to the head. Dr. Young concluded from the autopsy and Dr. Gill's report that [A.M.] had died from blunt force trauma to the head and asphyxia injury. He listed the manner of death as homicide.

[Petitioner] was charged with one count of second degree murder, two counts of child abuse, and two counts of child endangerment. He was found guilty by a jury and sentenced to twenty five years for murder and child abuse, to run concurrently but consecutively to two concurrent sentences of seven years for child endangerment. This appeal followed.

Doc. 5-7, pp. 4-7.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v.*

*Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## Discussion

Petitioner raises three grounds for relief: (1) petitioner is actually innocent as demonstrated by evidence withheld in violation of *Brady*[2]; (2) trial counsel was ineffective for preventing petitioner from exercising his right to testify; and (3) trial counsel was ineffective for failing to object to the prosecution's closing argument. Doc. 1, pp. 5-8.

### I.     *Ground 1*

In Ground 1, petitioner raises a claim of actual innocence. Within Ground 1, petitioner asserts 4 sub-claims regarding *Brady* violations in support of his actual innocence claim. Specifically, petitioner claims that the prosecution withheld (1) investigative reports drafted by law enforcement after interviewing Kansas City Fire Department personnel immediately following the car accident, (2) eye-witness statements that would verify that A.M. was hurt by his mother in past incidents, and (3) Dr. Gill's medical examiner's report that prompted a change of the final autopsy report to homicide. Doc. 1, p. 5. Petitioner maintains that Ground 1 is a freestanding claim of actual innocence and should not be construed as a gateway claim.

As for petitioner's claim of actual innocence, petitioner fails to sufficiently plead a free

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

standing claim or a gateway claim to establish cause and prejudice for his procedural default. Claims of actual innocence require habeas petitioners to provide new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Evidence is new only if it was unknown to petitioner at the time of trial, due diligence would not have uncovered the evidence, the evidence is material, and the emergence of the new evidence would probably have led to an acquittal. *United States v. Baker*, 479 F.3d 574, 577 (8th Cir. 2007). Specifically, the petitioner must demonstrate that, in light of the new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *House v. Bell*, 547 U.S. 518, 538 (2006).

In a recent decision, the United States Court of Appeals for the Eighth Circuit summarized:

> The Supreme Court has not decided whether a persuasive demonstration of actual innocence after trial would render unconstitutional a conviction and sentence that is otherwise free of constitutional error. *See House v. Bell*, 547 U.S. [at] 554-55[ ]. The Court has established, however, that the threshold for any such [freestanding] claim, if it were recognized, would be "extraordinarily high." *Herrera v. Collins*, 506 U.S. 390, 417(1993). The threshold, if it exists, would require "more convincing proof" than the "gateway" standard that allows for consideration of otherwise defaulted constitutional claims upon a showing of actual innocence. *House*, 547 U.S. at 555; *see Schlup v. Delo*, 513 U.S. 298, 315 (1995). Thus, on a freestanding claim of actual innocence, it is not sufficient that a petitioner shows even that it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The "extraordinarily high" threshold, if recognized, would be even higher. *House*, 547 F. 3d at 555."

*Dansby v. Hobbs*, 766 F. 3d 809, 816 (8th Cir. 2014).

In contrast to such a freestanding claim of actual innocence, a gateway claim of actual innocence requires that petitioner allege both: (1) newly discovered evidence establishing the offender's innocence; and (2) an independent constitutional violation occurring in the underlying state criminal proceeding. *Herrera v. Collins*, 506 U.S. at 400; *see also Meadows v. Delo*, 99

F.3d 280, 283 (8th Cir. 1996). This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Herrera*, 506 U.S. at 400 (citing *Moore v. Dempsey*, 261 U.S. 86, 87-88 (1923) ("[W]hat we have to deal with [on habeas review] is not the petitioners' innocence or guilt but solely the question whether their constitutional rights have been preserved.")). As to a claim of actual innocence under *Schlup,* it is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup*, 513 at 315. However, the Supreme Court cautioned in *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), that "tenable actual-innocence gateway claims are rare."

While petitioner has failed to sufficiently plead an independent constitutional violation, it is unnecessary to attempt to apply the higher free-standing claim burden discussed in *Herrera*. Even applying the lower gateway claim burden of proof required by *Schlup*, petitioner has failed to allege that there is newly discovered evidence establishing his innocence. The evidence presented by petitioner is not "new" because the autopsy report, witness statements and investigative reports were all discoverable at trial, if not already in discovery or part of evidence at trial. As such, the evidence is not considered to be new.

Petitioner's *Brady* sub-claims 1 and 2 regarding investigative reports and witness statements are procedurally defaulted. If petitioner's Ground 1 is to be construed as a gateway actual innocence claim in order to excuse his procedural defaults pursuant to *Schlup*, petitioner's claims fail because the evidence is not new as it was discoverable, if not discovered at trial. Petitioner's proffer of witness statements and investigative reports were most likely known to petitioner at the time of trial, and if not, due diligence would have uncovered them as they were

presented in discovery.  Further, the emergence of this evidence would not have led to an acquittal as required for the evidence to be considered new, as petitioner himself conceded that the evidence only lends support toward an alternative defense theory regarding who abused the child.

As to petitioner's *Brady* claim regarding the medical examiner's report, petitioner's Ground 1 sub-claim 3 fails under *Brady* because it is not exculpatory evidence.  A *Brady* claim requires: (1) the existence of exculpatory evidence; (2) the failure of the state to disclose the evidence; and (3) prejudice from the failure to disclose (i.e. whether the evidence was material). *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

As discussed in lengthy detail on direct appeal, the evidence regarding Dr. Gill's "reports" or medical findings is not exculpatory, nor is it material.  As the Missouri Court of Appeals determined, Dr. Gill's findings only established that the victim suffered blunt force trauma to his head. Doc. 5-7, p. 12.  This would not show actual innocence because, as the Missouri Court of Appeals found, this finding could support either the state's theory of abuse or the car accident theory, as claimed by petitioner at trial.  *Id*. at 13.  Any "report" of Dr. Gill's that Dr. Young relied on to reach his final autopsy findings or to support his testimony would also be unlikely to show actual innocence, as the Missouri Court of Appeals already determined that Dr. Young did not indicate that he relied on Dr. Gill's findings in reaching his conclusions of abuse and homicide rather than death by car accident.  *Id*.  As such, petitioner's claim fails to meet the Brady standard.  Consequently, Ground 1 will be denied.

## II.     *Grounds 2 and 3*

In Ground 2, petitioner asserts that trial counsel was ineffective for preventing petitioner from exercising his right to testify. Doc. 1, p. 7.  In Ground 3, petitioner alleges that trial counsel

was ineffective for failing to object when the prosecution misstated law and evidence during his closing argument. Doc. 1, p. 8.

In order for petitioner to successfully assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

To satisfy the prejudice prong, petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* at 694. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in *Strickland*." *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

The Missouri Court of Appeals, Western District, denied Ground 2 as follows:

> "'Criminal defendants have a fundamental right to testify in their own defense. Only the defendant can waive the right to testify.'" *Rios v. State*, 368 S.W.3d 301, 314 (Mo. App. 2012) (*quoting Davidson v. State*, 308 S.W.3d 311, 319 (Mo. App. 2010)). "'[I]f the defendant did in fact make a knowing waiver, then trial counsel's advice on whether or not to testify generally will be a matter of trial strategy' which is not a basis for post-conviction relief." *Id.*
>
> First, the record reflects that Mahone made a knowing waiver of his right to testify and Mahone did not argue on direct appeal that his waiver was unknowing. At Mahone's trial, the court addressed Mahone directly:

> Court: And I'm addressing this specifically to you, Mr. Mahone.
>
> Mahone: Yes, Sir.
>
> Court: I want to make sure you understand, of course, that you have an absolute right to take the stand as any other witness and testify and have your lawyer ask you questions and you respond to them and be subjected to cross-examination.
>
> You have an absolute right under our constitution to choose not to do that and remain silent here, and I want you to understand that it is exclusively your decision to make.
>
> I'm certain you have thought about it and discussed it with your lawyer and perhaps other people as well, but it seems that you've made a decision not to testify, and I just want to make sure you understand that it is your right to make that decision either way, and that either way you go, it is your choice and yours alone.
>
> And I'll offer you the opportunity to ask any questions about that if you have any or say anything else you would like to say.
>
> Mahone: (The defendant shook his head.)
>
> Defense: And, Judge, I have advised him not to answer the Court's questions. So, no disrespect to anybody, I've advised my client not to respond.
>
> Court: I just wanted to offer him the opportunity of asking one on his part. And I, for the record, would answer his questions.

Thus, while Mahone testified at his post-conviction relief hearing that he was unaware that he could have testified despite his attorney's advice against it, the record proves that the court made clear to Mahone that the decision to testify was his alone and Mahone acknowledged the court's explanation of his rights.

Further, although at Mahone's post-conviction relief hearing Mahone testified that he wanted to testify at his trial but defense counsel prevented him from doing so and refused to allow him to testify, defense counsel testified otherwise. Defense counsel testified that Mahone was informed of his right to testify, that counsel and Mahone discussed the benefits and ramifications of testifying, and that Mahone was informed that it was his decision to testify, regardless of counsel's advice. Counsel testified that counsel and Mahone

discussed that Detective Lenoir would be testifying to the statement Mahone had given during Mahone's interrogation and that there was nothing Mahone could testify to that was not already being introduced. Counsel recollected that counsel and Mahone agreed that testifying was not necessary and that Mahone desired not to testify.

We defer to the motion court's determinations of witness credibility in reviewing post-conviction hearing evidence. *Chacon v. State*, 409 S.W.3d 529, 533 (Mo. App. 2013). Given this deference, we cannot conclude that counsel prevented Mahone from testifying or that any advice counsel gave Mahone with regard to testifying was not reasonable trial strategy. Consequently, we cannot conclude that counsel failed to exercise the skill and diligence of a reasonably competent attorney under similar circumstances.

Doc. 5-14, pp. 11-13.

Further, the Missouri Court of Appeals, Western District, denied Ground 3 as follows:

In Mahone's third point on appeal, Mahone contends that the circuit court clearly erred in denying his Rule 29.15 motion for post-conviction relief because he was prejudiced by trial counsel's failure to act as a reasonably competent attorney when counsel failed to object to the State's improper closing argument which he believes misstated the law and evidence. Mahone argues that he was prejudiced "because the prosecutor's argument shifted the burden of proof and denigrated the mental state of recklessness as a "silly defense.'"

Mahone contends that counsel should have objected to the following in the State's closing argument:

> You don't do something like that to a child unless you want to do it, and that's what makes it Murder in the Second Degree. The other thing that makes it Murder in the
> Second Degree is Missouri doesn't give you an "oops" defense. Oops, I meant to beat him, but I didn't mean to kill him. We don't give that silly defense, and that's why the other alternative is felony murder.

Upon review of the record and viewing this statement in context, we do not find the State's closing argument objectionable. Mahone was charged with Murder in the Second Degree which required consideration by the jury of whether A.M. died as a result of Mahone's actions and whether Mahone purposefully caused serious physical injury to A.M. or knowingly created a substantial risk to the life or body or health of A.M. During the trial, the State presented evidence that A.M.'s death was not an accident but was the result of child abuse purposely inflicted by Mahone. Thus, the aforementioned excerpt from the State's closing, viewed contextually with the State's arguments as to how murder in the second degree, as

> opposed to involuntary manslaughter, applied to the facts of Mahone's case, was not a misstatement of the law but an application of the law to the facts with reasonable inferences drawn from the evidence. The facts were not misstated in this excerpt as there was considerable evidence that, aside from the blunt force trauma to the head and/or asphyxiation that killed A.M., he had other injuries indicative of child abuse. As the State's closing argument was not objectionable, counsel cannot be deemed ineffective for failing to make a non-meritorious objection. *Johnson v. State*, 406 S.W.3d 892, 905 (Mo. banc 2013). Consequently, Mahone has failed to prove that counsel failed to exercise the skill and diligence of a reasonably competent attorney under similar circumstances.

Doc. 5-14, pp.13-14 (internal footnotes omitted).

In holding that petitioner's claims of ineffective assistance of trial counsel did not merit post-conviction relief, the state appellate court identified and applied reasonably the *Strickland* standard. Doc. 5-14, pp. 11-14. Petitioner fails to establish that it was unreasonable for the state appellate court to find that petitioner was advised of his right to testify, trial counsel informed him of the consequences of testifying, and trial counsel did not prohibit petitioner from testifying, and that trial counsel was reasonable in not making a meritless objection during the prosecution's closing argument. Insofar as the motion court found that trial counsel was credible and that petitioner lacked credibility, credibility determinations are left for the state court to decide. *Graham*, 728 F.2d at 1540

Because the state courts' determinations as to Grounds 2 and 3 did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Grounds 2 and 3 will be denied.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy

this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004).  Because petitioner has not met this standard, a certificate of appealability will be denied.  See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is denied; the issuance of a certificate of appealability is denied; and this case is dismissed with prejudice.

>  /s/ *Gary A. Fenner*
>  GARY A. FENNER
>  UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:   February 8, 2016.